IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER R. JOHNS, | ) |
| Plaintiff, | ) |
| vs. | ) Civil No. 20-107 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

ORDER

AND NOW, this 26th day of March, 2021, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, finds the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153—54 (2019); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988)); *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (reviewing the Commissioner's final determination, the Court "may neither reweigh the evidence, nor may we reverse the Secretary merely because we would have decided the claim differently.") (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981)).[1]

---

[1] Plaintiff argues remand is appropriate because the Administrative Law Judge ("ALJ") erred in two respects, first by inappropriately affording "great weight" to one of the medical opinions in the record, and, second, by failing to address whether Plaintiff's cervical condition constituted a listed impairment. The Court disagrees and finds that substantial evidence supports the ALJ's findings and ultimate determination of non-disability.

Plaintiff's first argument is that the ALJ should not have afforded the medical report produced by Dr. Tad Gorske "great weight." (Doc. No. 17, pg. 7). ALJs are obligated to consider all the medical evidence in a claimant's record, *Beatty v. Barnhart*, 112 F. App'x 163, 164 (3d Cir. 2004) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)), and they assign weight to "the various medical opinions in the record" based on a number of factors. *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 913 (3d Cir. 2014) (citing 20 C.F.R. § 416.927)). When an ALJ's determination of a particular medical opinion's weight is supported by substantial evidence, reviewing courts do not disturb it. *See Dority v. Comm'r Soc. Sec.*, 621 F. App'x 728, 731 (3d Cir. 2015) (finding the ALJ's decision and the "weight the ALJ ascribed" to medical testimony "supported by substantial evidence").

Dr. Gorske saw the Plaintiff on November 30, 2012. (R. 747). At that time, Dr. Gorske performed a neuropsychological evaluation at the request of Dr. Betty Liu. (R. 747). At his appointment with Dr. Gorske, Plaintiff reported significant symptoms, including headaches reaching a 10/10 severity; sleep interruptions caused by head and neck pain; general neck and elbow pain; changes in mood, such as irritability; slurred speech (as reported by friends and family); memory problems; double vision; photo or phonophobia; episodes of depression; and dizziness. (R. 747—49). Dr. Gorske recorded Plaintiff's complaints and his own observation that Plaintiff was distressed and frustrated. He also noted Plaintiff was vague and a poor historian, though pleasant and cooperative. (R. 749—50). Dr. Gorske further noted bilateral tremors in Plaintiff's hands, three instances of spontaneous jerking, and several impairments of attention and ability ranging from mild to severe. (R. 750—51) (taking note of Plaintiff's borderline verbal reasoning skills, a moderate impairment in immediate sensory attention, a severe impairment in speed of attention and visual motor tracking, a moderate impairment in divided attention and psychomotor speed, a moderate impairment in learning slope, a severe impairment in ability to recognize words, a severe impairment on tests designed to assess mental flexibility and set shifting, and a mild impairment for executive functioning skills).

In addition to these initial findings, Dr. Gorske documented what he referred to as a "confounding factor," (R. 751), that being Plaintiff's failure to pass several "formal and embedded symptom validity tests (SVT)" during the evaluation. (R. 751). Plaintiff's performance in that regard was strikingly poor—on a "forced choice embedded measure, 100% of sample respondents scored better" than the Plaintiff did. (R. 751). Because of the "confounding factor," Dr. Gorske added a warning to his evaluation: "no valid interpretations can be made about Mr. Johns neuropsychological test results and I would not recommend using this evaluation for legal, financial, or compensation decision making." (R. 751).

Plaintiff now argues that warning should have been heeded by the ALJ. How, Plaintiff asks, was it appropriate for the ALJ to afford great weight to Dr. Gorske's opinion in proceedings before the Commissioner when Dr. Gorske warned against his report's use in legal, financial, or compensation decision making? However, in posing that question, Plaintiff misapprehends the nature of the ALJ's consideration of Dr. Gorske's evaluation. Far from ignoring Dr. Gorske's warning, the ALJ emphasized it to demonstrate a pattern of symptom exaggeration in Plaintiff's medical records. The ALJ found Dr. Gorske's concerns in this regard to be consistent with the concerns Drs. Abraham and Talbott expressed in their medical opinions.

(R. 26). Like Dr. Gorske, Dr. Abraham—who evaluated Plaintiff in August 2013 and March 2016—questioned whether Plaintiff was exaggerating his symptoms, finding Plaintiff's "self-portrayal of functional impairment is more than I would normally predict." (R. 494, 499). Dr. Talbott, evaluating Plaintiff for his worker's compensation claim in 2013, similarly noted the "potential for symptom magnification." (R. 799). With that in mind, the ALJ assigned "great weight" to Dr. Gorske's assessment, (R. 26) which was appropriate, considering its consistency with Plaintiff's "record as a whole." 20 C.F.R. § 404.1527(c)(4). Thus, the Court discerns no error in the ALJ's decision to afford Dr. Gorske's opinion great weight, and will not, as Plaintiff requests, remand for the ALJ to produce a decision without considering it.

Plaintiff's second argument is that the ALJ failed to consider, "at any point in Finding of Fact 4," whether Plaintiff's cervical condition met or equaled Listing 1.04, Disorders of the Spine, 20 C.F.R. § 404, Subpart P, Appendix 1. At step three of the "five-step evaluation process to determine whether an individual is disabled," the ALJ considers whether "evidence establishes that the claimant suffers from a listed impairment." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The ALJ "identif[ies] the applicable listings to consider," but the claimant carries the burden of proof to show the "impairment matches a listing or is equal in severity to a listed impairment." *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *2 (W.D. Pa. Apr. 12, 2017). *See Blose v. Colvin*, No. CIV.A. 14-016E, 2014 WL 4924905, at *2 (W.D. Pa. Sept. 30, 2014) (explaining claimants' burden to "present medical findings equal in severity to all the criteria for the one most similar listed impairment."). In assessing relevant listings and claimants' evidence at step three, ALJs must provide more than a "bare conclusory statement" that a claimant's impairment is not a good match for a listing or equivalent thereto. *Jones*, 364 F.3d at 504 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000)). However, the emphasis is on substance rather than form; therefore, ALJs need not follow a "particular format" or use "particular language" to satisfy the requirement of *Burnett*. *Id.* at 504—05. Rather, an ALJ's opinion must provide a reviewing court with a "record and explanation of findings" that are adequate to "permit meaningful review." *Id.* at 505.

Contrary to Plaintiff's assertion that the Court "is unable to engage in any meaningful review of whether the ALJ adequately considered Plaintiff's claim at Step Three under Listing 1.04" (Doc. No. 17, pg. 9), there is sufficient discussion surrounding Listing 1.04 in the ALJ's decision to permit meaningful review. In his opinion, the ALJ found Plaintiff had thirteen severe impairments: obesity, post-traumatic headaches, cervical degenerative disc disease, myofascial pain syndrome, post-concussive syndrome, bipolar disorder, cervical vertebral fusion syndrome, Kippel-Feil syndrome, manic depressive disorder, anxiety, panic attacks, mild neurocognitive disorder, and an adjustment disorder. (R. 17). As part of the ALJ's severe medical impairment findings, the ALJ highlighted the lack of "evidence of significant symptoms, limitations or treatment for a cervical strain." (R. 17). The ALJ acknowledged that Plaintiff had undergone a discectomy and fusion in 2012 (R. 17), and that imaging had indicated the possibility of C6 root impingement and stenosis. (R. 18). However, the ALJ further noted that "physical and neurological findings" related thereto had been "unremarkable." (R. 18). In support of that finding, the ALJ pointed to evidence in the record concerning Plaintiff's cervical spine before and after fusion. (R. 18 (citing exhibits)). Prior to fusion, the evidence indicated possible impingement of Plaintiff's C6 nerve root, but no spinal cord abnormality. (Exhibit 20F, R. 687,

3

*Radiology Report, dated 11/29/2011, from Centre Commons MRI*, cited at R. 18). The fusion itself appeared to be largely successful. (Exhibit 32F, R. 741, *Radiology Report, dated 10/09/2012, from UPMC*, cited at R. 18). Five months after the procedure, Plaintiff visited the Emergency Department at UPMC Presbyterian Hospital, complaining of headache, neck pain, fatigue, and sleeplessness. (Exhibit 33F, R. 742—43, *Emergency Department Records, dated 10/27/2012, from UPMC Presbyterian Hospital*, cited at R. 18). He was determined to be suffering from tension headache and postoperative neck pain, but with minimal treatment "felt very well and was prepared for discharge." (R. 742—43). That and other evidence in the record support the conclusion that, while fusion did not eliminate Plaintiff's neck pain and headaches, its results were favorable and Plaintiff's motor strength remained intact. (R. 790). The ALJ indicated he considered this evidence. (R. 17—18).

After going through the medical records related to Plaintiff's cervical condition, the ALJ considered whether Plaintiff suffered from a listed impairment. The ALJ specifically considered Listings 1.04, 11.02, 12.02, 12.04, and 12.06. (R. 18). Considering those listings, the ALJ found that despite Plaintiff's subjective complaints of pain and other symptoms, the "physical examinations" in the record indicated "full passive and active range of motion, normal strength, sensation and reflexes." (R. 18). Without "objective signs of neurologic deficit," (R. 18), the ALJ determined Plaintiff neither suffered from Listing 1.04, Disorders of the Spine, nor any other listed impairment. That conclusion is supported by substantial evidence and is appropriate, considering the requirements for Listing 1.04. For a claimant to meet or equal the listing at 1.04, they must suffer from a disorder of the spine that compromises the nerve root or spinal cord, and there must be (A) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," (B) confirmed spinal arachnoiditis, or (C) confirmed lumbar spinal stenosis. Listing 1.04, 20 C.F.R. § 404, Subpart P, App. 1 (Plaintiff does not point to any evidence in the record of spinal arachnoiditis (1.04B), or lumbar spinal stenosis (1.04C)). Substantial evidence in the record supports the ALJ's determination that Plaintiff lacked motor loss or atrophy with muscle weakness for Listing 1.04A. Dr. Abraham, whose opinion the ALJ afforded partial weight, found no atrophy. (R. 494, 498). Dr. Talbott also found Plaintiff's strength normal. (R. 799 ("[H]e is a well developed, muscular individual who has absolutely no weakness in any representative muscle group in any extremity.")). The ALJ afforded great weight, in part, to Dr. Sabeh's opinion wherein Dr. Sabeh observed Plaintiff was able to ascend and descend the exam table without assistance and rise from his chair without difficulty. (R. 474). Dr. Sabeh also noted a lack of muscle atrophy in extremities. (R. 474).

Considering these medical opinions, the ALJ's determination that Plaintiff did "not have objective findings of the necessary severity to meet or medically equal" Listing 1.04 (R. 18), is one that a "reasonable mind might accept," therefore, it is supported by substantial evidence. *Varano v. Colvin*, No. 3:14-CV-001467-GBC, 2015 WL 5923615, at *13 (M.D. Pa. Oct. 9, 2015). While the ALJ could have included or repeated all of his findings concerning Plaintiff's cervical condition under the fourth heading of his opinion where he specifically addressed listed impairments, it is clear from the record as a whole that he considered Plaintiff's cervical condition in light of Listing 1.04. *Cooper*, 563 F. App'x at 911 (finding the ALJ's listings

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED.

/s Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

discussion sparse but sufficient to permit meaningful review). Further, the ALJ explained why he afforded less weight to Dr. Liu's opinion, which, contrary to the other medical opinions in the record, indicated some weakness. (R. 23—24). Plaintiff has not, at this time, pointed to evidence in the record demonstrating that his cervical condition meets the specific requirements for Listing 1.04.

The Court further notes that though Plaintiff identified Listing 11.02 as another listing the ALJ failed to address at heading "II" of the brief accompanying his motion (Doc. No. 17, pg. 8), the substance of Plaintiff's listings argument is limited to whether the ALJ failed to adequately address Listing 1.04. "In the absence of any substantive or meaningful analysis" regarding the ALJ's consideration of Listing 11.02, the Court will not address such an issue. *Salyards ex rel. Pittinger v. Astrue*, No. CIV.A. 11-151, 2013 WL 53728, at *2 (W.D. Pa. Jan. 3, 2013). The Court discerns no error in the ALJ's determination Plaintiff did not suffer from listed impairment. Accordingly, the Court finds the ALJ's ultimate determination of non-disability is unmarred by error and supported by substantial evidence. The Court thus grants Defendant's Motion for Summary Judgment.